IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES MACK                                                                                    PLAINTIFF

v.                                    Civil No. 4:10-cv-04129

SHERIFF RON STOVALL;
SGT. JOHNNY WELCH;
CPL. TRACEY SMITH; and
OFFICER RACHEL JONES                                                          DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, James Mack, pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Plaintiff is currently an inmate of the Arkansas Department of Correction (ADC), East Arkansas Regional Unit, in Brickeys, Arkansas. The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Miller County Detention Center (MCDC) in Texarkana, Arkansas. Plaintiff alleges excessive force was used against him on June 15, 2010. Specifically, he alleges that after he was physically restrained a taser was used against him. Afterwards, Plaintiff contends he received no medical care.

The Defendants have filed a motion for summary judgment (ECF No. 22). The Plaintiff filed his response (ECF Nos. 27 & 28 ). Defendants filed a reply (ECF Nos. 29 & 30). The motion is now ready for decision.

**1. Background**

According to Plaintiff, the June 15, 2010, incident started when Corporal Tracey Smith (hereinafter Smith) attempted to "snatch" a "black wave cap[1]" off of Plaintiff's head. (ECF No. 1 at pg. 4). Plaintiff told Smith not to place his hands on him. Plaintiff states he then attempted to compromise by telling Sergeant Johnny Welch (hereinafter Welch) that he would remove the cap himself. *Id.* Welch then attempted to "grab" Plaintiff's cap. *Id.* Plaintiff told Welch not to place his hands on him.

Plaintiff asserts that both Smith and Welch then rushed him and grabbed his arms. (ECF No. 1 at pg. 4). Despite the fact that Plaintiff was being physically restrained, Plaintiff alleges Welch instructed Officer Rachel Jones (hereinafter Jones) to shoot Plaintiff with the taser in the back. *Id.* After he was tased, Plaintiff states the prongs were removed and he was placed initially in "R&D" and then in Super Max without any medical treatment. (ECF No. 1-1 at pg. 2).

Plaintiff was given a major disciplinary that day for possession of an unauthorized item and rioting or encouraging others to riot. *Defendants' Exhibit* A (hereinafter *Defts' Ex.*). According to the disciplinary form, it was against the rules for inmates to possess wave caps in any color except white. *Id.* Smith stated that Plaintiff made it clear that he was not going to take the cap off and attempted to incite the other inmates in the pod. *Id.* Smith indicated that Plaintiff was resisting being put in hand restraints. *Id.* It was at this point that Welch gave Jones the order to tase the Plaintiff. *Id.* Plaintiff states he was found not guilty or rioting or encouraging others to riot.

According to Jones, Plaintiff was initially engaged in a verbal altercation with Welch and Smith but the confrontation escalated when Plaintiff took a swing at Welch. *Defts' Ex.* B at ¶¶ 4-5.

---

[1] Also referred to as a "du-rag."

Welch and Smith then attempted to take plaintiff to the ground. *Id.* at ¶ 6. At the time, Jones was standing in the doorway with her taser drawn. *Id.* at ¶ 7. During the struggle, an inmate made a comment about Jones having a taser. *Id.* at ¶ 9. Welch looked back at Jones and asked her to tase Plaintiff. *Id.* at ¶ 10. At the time the taser was used, Jones states the Plaintiff, Welch and Smith "were all standing and were engaged in a mutual struggle. [Plaintiff] was not subdued at that time." *Id.* at ¶ 12. In Jones' opinion, "it is likely that the use of a taser in this situation reduced the chance of [Plaintiff] and the officers involved in the struggle from receiving serious injuries." *Id.i at* ¶ 13.

Jones removed the taser prongs from Plaintiff's back while he was still laying on the floor of the pod. *Defts' Ex.* B at ¶14. She then got some alcohol swabs and band-aids, swabbed the entry wounds from the taser prongs, and applied the band-aids. *Id.* at ¶ 16. Jones states that Plaintiff did not make any complaints about other injuries or ask for additional medical treatment. *Id.* at ¶ 17. The incident occurred at about 11:40 p.m. and there was not a nurse at the jail at the time. *Id.* at ¶ 18. However, Jones indicates Plaintiff was seen by a nurse the next morning.[2] *Id.*

### 2. Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

---

[2] Two grievances attached to the complaint both dated June 21st contain the statement in the response area of the form that medical staff was not informed of the incident and medical attention was not denied by medical staff. (Doc. 1-1 at pgs. 4-5). This seems to belie Jones' assertion that Plaintiff was seen by a nurse the following morning.

### 3. Arguments of the Parties

First, with respect to any official capacity claims, Defendants argue no showing can be made that a policy or custom of Miller County was the moving force behind any alleged constitutional violations. Second, Defendants argue Sheriff Stovall was not personally involved in the events that are the subject of this suit and there is no basis on which he can be held liable. Third, Defendants maintain the use of the taser was not excessive as there was a clear and present threat to the safety of Welch and Smith at the time the taser was deployed by Jones. Fourth, Defendants maintain there is no evidence of deliberate indifference to Plaintiff's serious medical needs on their part. In this regard, they note they are not medical professionals and that Plaintiff's grievances about not receiving medical care were responded to by the jail nurse. Finally, Defendants maintain they are entitled to qualified immunity.

Plaintiff refers the Court to the affidavits[3] he submitted with his complaint that state Welch and Smith had him by the arms when the order was given to tase him. He denies that he took a swing at Welch and states the video from the camera in the pod should reflect this.[4] He maintains the use of the taser was excessive. He also maintains the Defendants violated their own policy when the medical staff was not immediately notified of the use of the taser on him.

### 4. Discussion

"To state a claim under [§ 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the allege conduct deprived the plaintiff of a constitutionally protected federal right." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011). In this case, Plaintiff

---

[3] There are nine affidavits from fellow inmates. The wording of each appears to be identical and in the same handwriting. The signatures, however, appear to have been affixed by someone other than the person who wrote the statement.

[4] Defendants indicate there is no video footage of this incident.

maintains his constitutional rights were violated in two ways: (1) the excessive use of force; and (2) denial of medical care.

### (A). Excessive Use of Force

The summary judgment record does not indicate whether Plaintiff was a pretrial detainee or a convicted prisoner at the time of the alleged use of excessive force. In view of this, I will apply the objective reasonableness standard applicable to pretrial detainees. In *Johnson-El v. Schoemehl,* the Eighth Circuit court noted that:

> [u]nlike convicted prisoners, the state has no right to punish [pretrial detainees]. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1871-72, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. *Id*. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. As a pretrial detainee, Freeman's excessive-force claim is properly analyzed under the due process clause of the Fourteenth Amendment. *See Graham v. Conner*, 490 U.S. 386, 395 & n. 10 (1989) (due process clause protects pretrial detainee from force amounting to punishment).

*Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. *Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. *Schoemehl*, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them.

*See e.g., Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996).

In general, the use of force is "justified when there was a concern for the safety of the institution, the jailers, and the inmates." *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993). In the context of the use of tasers, the Eighth Circuit has held the "prisoners have a clearly established right to be free from a Taser shock or its equivalent in the absence of a security threat." *Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009). "Tasers fire metal probes into the skin, penetrating up to half an inch. Connected by wires to the taser, the probes can deliver a 50,000 volt shock that lasts up to five seconds and causes electrical muscular disruption." *McKenney v. Harrison*, 635 F.3d 354, 362 (8th Cir. 2011)(citations omitted). " The Eighth Circuit noted that "a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." *Hickey*, 12 F.3d at 757. The use of a taser to ensure compliance with housekeeping regulations is not constitutionally permissible. *Id.* at 759.

"Just as officers may use guns only against suspects posing a threat of serious physical harm, the use of tasers requires sufficient justification for their use to be reasonable." *McKenney*, 635 at 364. In this case, I believe a question of fact exists as to whether Plaintiff posed a threat of serious physical harm. While Jones states Plaintiff threw a punch at Welsh, there is no mention of this in the major disciplinary report and no mention of it in any of the witness statements submitted by Plaintiff. The Court has not been provided with the affidavit of Smith or Welch. Whether Plaintiff was attempting to strike Welch is a fact that must be considered in deciding whether excessive force was used. *See e.g.,. Jasper v. Thalacker*, 999 F.2d 353 (8th Cir. 1993)(The Eighth Circuit has held that the use of a stun gun to subdue a prisoner who had verbally threatened and then lunged at a

prison official did not constitute the use of excessive force); *King v. Shoar*, No. 3:06-cv-61, 2007 WL 2066171 (M.D. Fla. July 13, 2007)("While the use of a taser is not per se excessive force, . . . it may be unnecessary, and therefore unreasonable, for an officer to use force if a suspect if already secured). This question of fact precludes a finding of qualified immunity.

I turn to an examination of the claim asserted against Sheriff Stovall. "[A] supervisor is only liable for [his] . . . own misconduct and is not accountable for the misdeeds of [his] agents under a theory such as respondeat superior or supervisor liability." *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011)(citations omitted). A supervisor may incur liability if he was personally involved in the alleged violation or if he knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it. *Ottoman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003)(citations omitted). Nothing suggests Sheriff Stovall was involved in, aware of, or approved the use of the taser.

Similarly, there is no basis on which Miller County can be held liable. The County may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691 (1978). There is no suggestion of the existence of a custom, policy, or practice of Miller County.

### B. Medical Care

Plaintiff maintains he was not provided medical care after the taser was used on him. "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *McRaven v. Sanders,* 577 F.3d 974, 979 (8th Cir. 2009)(citation omitted); *see also Holden v. Hirner*, 663 F.3d 336 (8th Cir.

-7-

2011)(Eighth Amendment's deliberate indifference standard is applied to a denial of medical care claim brought by a pretrial detainee). "This indifference extends to prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

In this case, Jones removed the prongs, cleaned the entry wounds, and applied antiseptic and band aids within a short time of the occurrence. There is no indication that Plaintiff was in physical distress or that he needed emergency medical care. In grievances, Plaintiff complained about not receiving medical treatment but there is no indication on the grievance forms of the physical conditions he believed needed to be treated, further he submitted no sick call slips even after having been informed that the medical staff was unaware of the incident. There is nothing to suggest Jones, Smith, or Welch refused Plaintiff treatment, interfered in anyway with his treatment, or had any say in the medical care provided to inmates. In short, there is no evidence of deliberate indifference on their part. Furthermore, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden*, 663 F.3d at 342 (internal quotation marks and citation omitted). Plaintiff has presented no such evidence.

### 5. Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (ECF No. 22) be granted in part and denied in part. Specifically, the motion should be granted with respect to all official capacity claims and all denial of medical care claims. This would dismiss all claims against Sheriff Stovall. The motion should be denied with respect to the excessive force claims

against Welch, Smith, and Jones.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2012.

       /s/ Barry A. Bryant  
       HON. BARRY A. BRYANT  
       UNITED STATES MAGISTRATE JUDGE